IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARC DEFEO,
                        *Plaintiff,*
        v.

WARD TRANSPORT & LOGISTICS
CORP., *doing business as* WARD
TRUCKING,
                        *Defendant.*

CIVIL ACTION
NO. 23-1560

**PAPPERT, J.**                                                    **August 29, 2023**

**MEMORANDUM**

Marc Defeo sued his former employer, Ward Trucking, alleging he is owed

overtime wages under the Fair Labor Standards Act and the Pennsylvania Minimum

Wage Act.  (Compl., ECF 1.)  The parties reached a settlement of Defeo's claims and

now move for the Court's approval.  The Court grants the Motion and approves the

settlement.

I

Defeo worked as a "yard jockey," moving trailers to different areas within Ward

Trucking's property, for over five years before he was terminated in mid-April of 2023.

(Compl. ¶ 10.)  He claims he typically worked five twelve-hour shifts per week and

averaged roughly sixty-five hours of work per week, including time he often spent

filling in for others after his shift ended.  (*Id.* at ¶¶ 22–23.)  Despite working for a

trucking company, Defeo did not possess a commercial driver's license and exclusively

drove trailers on the company's private property.  (*Id.* at ¶ 17.)  Defeo contends that,

because he did not possess a CDL, he was a non-exempt employee under the FLSA and

PMWA entitled to overtime compensation at a rate of time and one half his pay for all

hours worked in excess of 40 hours per week.  (*Id*. at ¶ 18.)

Ward Trucking denies the material allegations and claims in the Complaint. (Prop. Consent Order ¶ 5, ECF 21.)  It concedes that Defeo was paid his regularly hourly rate for all hours worked in a workweek but contends that Defeo was an exempt employee under the "Motor Carrier Exemption" in the FLSA and PMWA.  (Answer ¶ 13, ECF 9.)  Ward argues that, in addition to having yard jockey responsibilities, Defeo was a dock worker who regularly loaded freight onto trailers which were thereafter transported on public highways in interstate commerce and also, for a brief period of time, was employed as a "non-CDL local delivery driver" where he completed the off-site final delivery of freight that had been transported in interstate commerce.  (Answer ¶ 16.)

The Court referred the case for compulsory arbitration on June 26, 2023.  (ECF 13).  The parties began settlement negotiations over the ensuing weeks and appeared before Magistrate Judge Hey on July 14 for a settlement conference, at which Ward proposed a settlement offer Defeo later agreed to.  (Prop Consent Order ¶ 7.)

Under the Agreement, Defeo will receive $2,000.00 in alleged unpaid overtime compensation, $2,000 in alleged liquidated damages, and $1,000.00 in alleged attorney's fees.  (Prop. Consent Order (Ex. A.) at ¶ 3.)  The parties now ask the Court to approve their settlement.

## II

### A

Congress enacted the FLSA to correct and eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers . . . "  29 U.S.C. § 202.  It concluded

that such conditions create unfair competition, lead to labor disputes, burden commerce

and the free flow of goods and interfere with orderly and fair marketing of goods. *Id.*

The statute guards against "unequal bargaining power as between employer and

employee." *Brooklyn Sav. Bank v. O'Neill*, 324 U.S. 697, 706 (1945).

Parties may settle FLSA claims by reaching a compromise supervised by either

the Department of Labor or by a district court. *See* 29 U.S.C. § 216(b), (c); *Kraus v. PA*

*Fit II, LLC*, 155 F. Supp. 3d 516, 522 (E.D. Pa. 2016). Although the Third Circuit has

not addressed whether parties may settle FLSA claims without court approval, most

district courts in this Circuit deem it necessary. *See Howard v. Phila. Housing Auth.*,

197 F. Supp. 3d 773, 776 (E.D. Pa. 2016).

i

To approve the parties' settlement, the Court must find it resolves a bona fide

dispute – that is, one involving "factual issues rather than legal issues such as the

[FLSA's] coverage and applicability." *Id.* at 777 (internal quotations omitted). There is

such a dispute here, as the parties disagree over whether Defeo's responsibilities

included loading freight bound to travel through interstate commerce and delivering,

off property, freight that had previously travelled through interstate commerce; in

other words, whether his role falls under an exception to the FLSA and PMWA. *See*

(Compl. ¶¶ 16–17); (Answer ¶ 16.) Whether Plaintiff was entitled to overtime

compensation and how much he might be owed presents "an issue of fact that is

precisely the kind of dispute that qualifies as a bona fide dispute," and disputes over

the applicability of an exception "fall[] within the contours of the FLSA." *Katherine*

*Devine v. Ne. Treatment Ctrs., Inc.*, No. 20-02417, 2021 WL 4803819, at *2 (E.D. Pa.

Oct. 14, 2021); *Altnor v. Preferred Freezer Services, Inc.*, 197 F. Supp. 3d 746, 763 (E.D. Pa. 2016).

ii

Because the settlement resolves a bona fide dispute, the Court considers whether it is "fair and reasonable" for the employee. *Howard*, 197 F. Supp. 3d at 777. This standard applies "to assess the propriety of FLSA collective action settlements and private (i.e., single-plaintiff) FLSA settlements alike." *Id.* To make this determination in the context of an FLSA settlement, courts often consider the factors used to evaluate the fairness of class action settlements. *See Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975); *Kraus*, 155 F. Supp. 3d at 523 n.3 (discussing whether and how courts should apply the *Girsh* factors in FLSA actions). When considering the settlement of individual FLSA claims, however, "at least some of the *Girsh* factors appear to be little help, if not irrelevant" and "courts need not fall into the alluring trap of mechanically applying *Girsh* . . . ." *Howard*, 197 F. Supp 3d at 777 n.1 (citation omitted). Here, the relevant factors include: the complexity, expense and likely duration of the litigation; the stage of the proceedings and the amount of discovery completed; the risks of establishing liability and damages; and the best possible recovery balanced against the attendant risks of litigation. *See Girsh*, 521 F.2d at 157.

Although the case is not complex, litigating it would be expensive and time-consuming. Absent a settlement, the parties would expend time and money on discovery, contested motions, an arbitration hearing and possibly a trial de novo. Considering the pleadings stage was just completed and the hearing has not yet occurred, a significant amount of litigation remains.

4

Counsel "adequately appreciated the merits of the case while negotiating . . . ." *DiFlavis v. Choice Hotels, Int'l, Inc.*, No. 18-3914, 2020 WL 6728806, at *3 (E.D. Pa. 2020) (citation and internal quotation omitted).  Counsel negotiated at arm's length for several weeks prior to coming to an agreement.  (Prop. Consent Order ¶ 7.)  Before settlement discussions began, both parties filed a Rule 26(f) status report in which they indicated their intent to have a jury trial, file case-dispositive motions and reserved their right to call expert witnesses.  (ECF 11.)  The terms of the final Negotiated Settlement Agreement were solidified during a settlement conference before Magistrate Judge Hey on July 14, 2023, giving the Court confidence that the parties adequately appreciated the merits of their respective cases in arriving at the agreed-upon resolution.  (Prop. Consent Order ¶ 7.)

In addition, Defeo risks being unable to establish liability due to Ward's assertions that his job responsibilities exempt him from overtime compensation under Section 13(b)(1) of the Fair Labor Standards Act and Section 333.105(b)(7) of the Pennsylvania Minimum Wage Act.  (Answer, Affirmative Defenses ¶¶ 1–4.)  While Defeo estimates $60,000.00 in unpaid overtime wages through the statutory lookback period, he potentially faces an all-or-nothing outcome should the case proceed to summary judgment or trial.  The proposed settlement of $5,000 will award Defeo compensation for some of his estimated unpaid wages and mitigate the risk that he receives nothing should the Court or a jury find that Ward's stated exceptions apply. Balancing the attendant risks of litigation and the best possible recovery supports approval of the settlement.

iii

The Court then must consider whether the settlement "furthers or impermissibly frustrates" the FLSA's implementation in the workplace. *Howard*, 197 F. Supp. 3d at 777. Courts considering proposed FLSA settlements caution against "overly burdensome confidentiality agreements, overbroad release language, or sealed filings." *VanOrden v. Lebanon Farms Disposal, Inc.*, No. 17-1310, 2019 U.S. Dist. LEXIS 181897 at *4 (M.D. Pa. Oct. 18, 2019). The parties' proposed agreement does not include any provisions which would be antithetical to the statute's aims. It includes no confidentiality provision and there are no sealed filings. The agreement's release is limited to claims specific to this litigation and does not apply to events occurring after the agreement's date. (Prop. Consent Order (Ex. A) at ¶ 6.) Further, the release is supported by liquidated damages, consideration beyond the amount attributed to his alleged unpaid hours. *Cf. Lyons v. Gerhard's Inc.*, No. 14-6693, 2015 WL 4378514, at *5 (E.D. Pa. July 16, 2015) (approving settlement containing general release where half the payment to plaintiff was for non-wage compensatory damages). Approving the settlement does not frustrate the FLSA's purpose.

B

In approving FLSA settlements, courts may "allow a reasonable attorney's fee to be paid by the defendant . . . ." 29 U.S.C. § 216(b); *see also Kraus*, 155 F. Supp. 3d at 533. Courts determine attorneys' fees under either the percentage-of-recovery method or the lodestar method. *In re Chickie's & Pete's Wage & Hour Litig.*, No. CIV.A. 12-6820, 2014 WL 911718, at *4 (E.D. Pa. Mar. 7, 2014). The percentage of recovery approach "awards a fixed portion of the settlement fund to counsel" and is the preferred method in the Third Circuit. *Solkoff v. Pennsylvania State Univ.*, 435 F. Supp. 3d 646,

658 (E.D. Pa. 2020) (citations omitted).

When evaluating the appropriateness of an attorneys' fee award under the

percentage-of-recovery method, the Court considers the following factors:

> (1) The size of the fund created and the number of persons benefitted; (2) the
> presence or absence of substantial objections by members of the class to the
> settlement terms and/or fees requested by counsel; (3) the skill and efficiency
> of the attorneys involved; (4) the complexity and duration of the litigation; (5)
> the risk of nonpayment; (6) the amount of time devoted to the case by
> plaintiffs' counsel; and (7) the awards in similar cases.

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000).

The *Gunter* factors relevant to this case, which favor approval of the attorneys'

fee request, include the size of the fund created, the skill of the attorneys involved, the

amount of time devoted to the case by counsel, and the awards in similar cases.  *See*

*Solkoff*, 435 F. Supp. 3d at 658.  While the case itself was not particularly complex and

will settle shortly after the pleadings stage, on balance the request satisfies *Gunter*.

The total payment due to Defeo is $5,000.00, $1,000.00 of which is payable to Defeo's

counsel for attorneys' fees.  *See* (Prop. Consent Order (Ex. A.) at ¶ 3).  The fee award

factors "need not be applied in a formulaic way . . . and in certain cases, one factor may

outweigh the rest."  *Gunter*, 223 F.3d at 195 n.1.

Plaintiff's counsel and their firm often appear before this Court in similar

matters and are sufficiently experienced to handle such disputes.  While counsel did not

include an itemized timesheet reflecting their work on the case, they spent, at a

minimum, three- and one-half hours in proceedings before this Court and Magistrate

Judge Hey.  (ECF 11, 20).  Excluding the time spent on pre-litigation investigation of

the claims, drafting pleadings, and preliminary negotiations, the fee amount imputes a

reasonable, minimum rate of $285.71/hour ($1000 (fees) ÷ 3.5 (hours before the Court) =

$285.71).  Further, the fee award represents 20% of the total settlement amount, which

is at the bottom end of the 19% to 45% range of fees commonly approved in the Third

Circuit.  *See Keller v. TD Bank, N.A.*, No. 12-5054, 2014 WL 5591033, at \*14 (E.D. Pa.

Nov. 4, 2014) (citing *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products

Liability Litigation*, 55 F.3d 768, 822 (3d Cir. 1995)).  Although the Court cannot

complete a lodestar cross check because it lacks Plaintiff's counsels' timesheets, it is not

necessary here given the reasonable imputed hourly rate and fee percentage falling at

the bottom end of the acceptable range.  *See Solkoff*, 435 F. Supp. 3d at 658 (citing *In re

Rite Aid Corp. Securities Litigation*, 396 F.3d 294, 300 (3d Cir. 2005) for the proposition

that the Court "may" use the lodestar method as a cross check).  The Court is confident

that the proposed fee amount is reasonable as required by 29 U.S.C. § 216(b).

An appropriate Order follows.

BY THE COURT:


*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

8